[Civ. No. 1676. Third Appellate District.—August 30, 1917.]

## J. H. MAGINNIS, Respondent, v. EMELINE W. HURLBUTT, Appellant.

QUIETING TITLE—EVIDENCE—BURDEN OF PROOF.—The plaintiff in an action to quiet title must establish title in himself, and he cannot do so by relying on the weakness of defendant's title.

ID.—TITLE OF PLAINTIFF—INSUFFICIENCY OF EVIDENCE.—In this action to quiet title to certain lands of which the plaintiff claimed to be the owner and entitled to possession, it is held the evidence is insufficient to establish title in plaintiff to the lands in dispute.

APPEAL from a judgment of the Superior Court of Lake County, and from an order denying a new trial. M. S. Sayre, Judge.

The facts are stated in the opinion of the court.

L. K. Fraser, H. B. Churchill, and Ornbaun & Fraser, for Appellant.

C. M. Crawford, for Respondent.

CHIPMAN, P. J.—Plaintiff brings the action to quiet title to certain lands of which he claims to be the owner and entitled to possession. The complaint was filed December 1, 1913. The land is described as situated in the county of Lake and bounded and described as follows: "Fraction in S. ½ of N. E. ¼ and fraction in N. ½ of S. E. ¼ and fraction in N. E. ¼ of S. W. ¼ of section 36, all in T. 14 N., R. 9 W., M. D. M.; and more particularly described in field-notes of the survey thereof, as follows: Beginning at a point on the meander line of Clear Lake, in front of section 36, in T. 14 N., R. 9 W., M. D. M., 25.24 chains east of the quarter-section

corner between sections 35 and 36 and run east 14.76 chains, to center of section; thence north 5.66 chains to margin of Clear Lake; thence along margin of lake, south $63\frac{1}{4}$ degrees east 9.42 chains; thence north $57\frac{1}{2}$ degrees east 5.47 chains; thence north $78\frac{1}{2}$ degrees east 5.16 chains; thence south 65 degrees east 7 chains; thence south $7\frac{1}{4}$ degrees west 11.99 chains, to meander line of Clear Lake; thence following the meander line north 80 degrees west, 23 chains; thence north 70 degrees west 15.77 chains, to the place of beginning, containing 30.56 acres.''

In her amended answer defendant denies plaintiff's ownership or right to possession of the land and admits that she claims an interest therein. For separate answer and defense, she alleges that for more than fifteen years continuously next preceding the commencement of this action she and her predecessors in interest have been and now are in the open, notorious, and exclusive possession of the property in dispute, and during all of said time have paid the taxes levied and assessed against the property. For still further separate answer and defense defendant alleges that she deraigns title through a certificate of purchase for said land from the state of California to Hosea B. Guernsey, and through a patent from the state of California to Nathaniel Hurlbutt, and by a deed of said Hurlbutt to Emeline W. Hurlbutt, defendant herein.

The cause was tried by the court without a jury and the following findings of fact were made: That each and all of the allegations of the plaintiff's complaint are true, and each and all of the allegations of the defendant's answer are untrue. The court specifically found that the defendant has not any estate, right, title, or interest whatever in said land; that she has not for more than fifteen years continuously, or at all, next preceding the commencement of this action, "possessed in any manner or to any extent the said land . . . or any part thereof; and that neither the said defendant nor her predecessors have ever been in the adverse possession of, or possessed the said premises adversely to the said plaintiff, to any extent, or for any length of time, whatever, or at all.'' The court also found specifically that defendant did not deraign title to said land, or any part thereof, through a certificate of purchase, as alleged in the answer, or through any other of the sources stated in defendant's answer.

As conclusion of law the court found that the plaintiff "is now, and was at the time of the filing of the complaint herein, had been for a long time prior thereto, the owner of, and entitled to the possession of, the lands and premises described in the complaint, and of the whole thereof, and is entitled to judgment herein forever quieting his title thereto," and a decree was accordingly entered.

Defendant moved for a new trial on the following grounds: (1) Irregularities in the proceedings of the court, and abuse of discretion by which defendant was prevented from having a fair trial; (2) Insufficiency of the evidence to justify the decision; (3) That the decision was against law; (4) Errors in law occurring at the trial and excepted to by the defendant. The motion was denied, and defendant appeals from the judgment and from the order denying her motion for a new trial.

Plaintiff claims title through one John C. Fishel, to whom the United States issued patent dated August 1, 1871, to lands therein described as follows: "Lots one, two, three and four and the southeast quarter of the southwest quarter of section thirty-six (36) in township fourteen (14) north of range nine (9) west Mount Diablo meridian in district of lands subject to sale at San Francisco, California, containing (138) one hundred and thirty-eight acres," which is the aggregate acreage of the four lots exclusive of the land in dispute. Plaintiff claims that these lands border on Clear Lake and that the meander line of the lake coincides with the said northerly boundary of lots 1, 2, 3, and 4, as shown on map or plat introduced in evidence by plaintiff. Plaintiff claims title to the land lying between said meander line and low-water mark on the shores of said lake, consisting of 30.56 acres. Fishel, the patentee, conveyed the lands to Elijah Reeves by the description given in the patent. By decree of distribution in the estate of Elijah Reeves, the land passed to his widow, Martha C., who, on October 13, 1886, conveyed the property to plaintiff by the same description and also conveyed to him certain contiguous land. Defendant introduced in evidence in support of her title a certificate of purchase of the state of California to Hosea B. Guernsey, dated July 24, 1889, fourteen years prior to the commencement of the action. The description of the land given in the said certifi-

cate is as follows: "Fraction in S. ½ of N. E. ¼, fraction in N. ½ of S. E. ¼, and fraction in N. E. ¼ of S. W. ¼ of section 36 in township No. 14 north, range No. 9 west, Mount Diablo meridian, containing 30.56 acres." This description apparently refers to land lying north of the said so-called meander line.

On October 8, 1900, said H. B. Guernsey assigned said certificate to his wife, Lizzie Guernsey, and she, on November 14, 1903, assigned the same to N. Hurlbutt, describing the land as in the certificate of purchase. On November 20, 1904, the state issued a patent to N. Hurlbutt which was introduced in evidence and purports to grant, bargain, and sell to him the land mentioned in said certificate and in the patent by the same description as given in the certificate, further reciting: "And more particularly described in the field-notes of said location as follows" (continuing as hereinbefore quoted from the complaint. After the words, "containing 30.56 acres," is the sentence: "Run by the true meridian, magnetic variation 17° 29′ east"). This description is the same as is shown on the plat introduced in evidence as correctly describing the land in controversy. On October 14, 1912, Nathaniel Hurlbutt conveyed the land to his wife, Emeline W. Hurlbutt, by the same description as given in the state patent.

The contention of plaintiff was at the trial and now is, and the court so found, that the patent to Fishel conveyed not only the acreage contained in said lots 1, 2, 3, and 4, but also conveyed all the land lying between the said meander line and low-water mark on said lake, and that through mesne conveyances plaintiff became and now is the owner thereof.

Appellant now urges that she has title by virtue of a valid state patent under the act of March 24, 1893 (Stats. 1893, p. 341), found as a part of the codification of that act in section 3493m of the Political Code. She also makes claim of title by adverse possession, and that plaintiff has lost all right by laches.

Section 1 of said act provides as follows: "Any person desiring to purchase any of the lands now uncovered or which may hereafter be uncovered by the recession or drainage of the waters of inland lakes, and inuring to the state by virtue of her sovereignty, or the swamp and overflowed lands not segregated by the United States, must make an application

therefor to the surveyor-general of the state" (stating the facts to be included in the application and describing the land by legal subdivisions, or by metes and bounds if the legal subdivisions are unknown).

Section 2 of the act provides that upon filing the application when the land has not been sectionized, the surveyor-general must authorize the county surveyor of the county where the whole or the greater portion of the land lies, to survey the same, and he shall make an actual survey thereof.

This act seems to deal with two classes of lands: First, those uncovered by the recession or drainage of the waters of inland lakes "and inuring to the state by virtue of her sovereignty"; and, second, as to swamp and overflowed lands not segregated by the United States. The state patent recites that it was issued under an act of the legislature of the state entitled, "An Act regulating the sale of the lands uncovered by the recession or drainage of the waters of inland lakes and unsegregated swamp and overflowed lands, and validating sales and surveys heretofore made," approved March 24, 1893.

We do not find it necessary to consider defendant's alleged title by adverse possession. Neither need we pass upon the point raised that plaintiff is estopped by his laches from maintaining the action. Some facts of more or less significance are found in affidavits read at the hearing of the motion for a new trial which cannot now be considered, for the reason these facts were not shown at the trial.

The burden was upon plaintiff to establish title which he could not do by relying on the weakness of defendant's title. (*Sears* v. *Willard*, 165 Cal. 12, [130 Pac. 869].) In our opinion the evidence is insufficient to establish title in plaintiff to the land in dispute. The United States patent to Fishel, through whom plaintiff claims title, calls for certain lots 1, 2, 3, and 4, and the S. E. ¼ of S. W. ¼ of section 36, T. 14 N., R. 9 W. Plaintiff introduced in evidence, as stated by counsel, "for purposes of illustration, and of showing the relative position of the land in controversy, to surrounding lands and to Clear Lake, the following map":

This map purports to show the meander line of the lake and the boundary of lots 1, 2, 3, and 4 thereon. The map shows the continuation of this meander line through section 36 and crossing the west line of the section 9.65 chains from its northwest corner. From the map it appears that there is a swamp and overflowed land location, No. 33, lying east of this meander line and east of lots 1 and 2. West of the disputed land and lying on both sides of the meander line of the lake marked on the map is swamp and overflowed land location No. 31. This land in location 31 was patented to Elijah Reeves by the state and was conveyed to plaintiff by the same deed which conveyed to him lots 1, 2, 3, and 4 of section 36. The disputed land lies between these two locations and is marked location 578. Apparently all three of these locations are swamp and overflowed land locations. The land embraced in location 31, now owned by plaintiff, consisting of 78.12 acres, is about equally divided by the so-called meander line of the lake. The lands lie on both sides of this meander line.

Witness Neal testified that he made the map introduced in evidence; that he was familiar with the land in dispute and adjoining lands, and that the map "is a true representation of the lands in controversy, and its surroundings"; that the land "borders on Clear Lake," and that "Clear Lake is a navigable body of water about twenty-five miles long and an average of five or six miles wide." Upon the foregoing evidence plaintiff rested his case.

Plaintiff introduced no government field-notes or official plats establishing the location of the meander line of the lake or that the land described in the Fishel patent was meandered by Clear Lake. The statement of witness Neal that the land "borders on Clear Lake" is not sufficient to show the location of the meander line of the lake. The map introduced by plaintiff locates the only meander line shown as running through the middle of a tract of land which plaintiff claims as swamp and overflowed land under a state patent, and some of this land is directly adjacent on the north and some directly adjacent on the west to the land in dispute. We think this map wholly insufficient to establish the location of the meander line of the lake and the northerly boundaries of the lots patented to Fishel.

Plaintiff claims under the statute, section 830 of the Civil Code, which provides that where land "borders upon a navigable lake or stream, where there is no tide, the owner takes to the edge of the lake or stream, at low-water mark." Plaintiff introduced no evidence to establish the edge of the lake at low-water mark to which he claimed the right to hold under the Fishel patent, nor was there any evidence that the land in dispute lies between such low-water mark and the said meander line of the lake. Nor was evidence introduced as to the character of the land in dispute—whether or not uncovered by recession of the lake or whether or not swamp and overflowed. Conceding that this meander line was established, the concession would carry no presumption that the land claimed by plaintiff was part of the lots mentioned in said patent.

The edge of the lake at low-water mark in front of these lots as designated in the Fishel patent may or may not extend to and follow the lines marking the boundaries of the land in dispute. A glance at the map will show it to be highly improbable that the boundaries of the disputed tract bear any

relation to "the edge of low-water mark" of the lake. Lots 1, 2, 3, and 4 are fractional parts of the section with acreage of each given. *Prima facie* the patent conveys only the land described.

In *Niles* v. *Cedar Point Club,* 175 U. S. 300, [44 L. Ed. 171, 20 Sup. Ct. Rep. 124], it was claimed that the fact that a meander line was run amounts to a determination by the Land Department that the surveyed fractional sections bordered upon a body of water, navigable or non-navigable, and that therefore the purchaser of these fractional sections was entitled to riparian rights. The court said: "But there is no such magic in a meander line. All that can be said of it is that it is an irregular line which bounds a body of land, and beyond that boundary there may be found forest or prairie, land or water, government or Indian reservation." And it was held in *Chapman* v. *Bigelow,* 77 Ark. 343, [92 S. W. 534], that where land is claimed through riparian rights, the burden is on the claimant to show the character or condition of the land before he will take beyond the meander line. The principle of these cases is that the meander line is not conclusive of rights to land lying beyond it and outside of the described land. It is quite conceivable that there may be bodies of land beyond "the edge of the lake at low-water mark," properly classable as swamp and overflowed land, along the borders of Clear Lake. The state has proceeded upon this assumption; plaintiff holds state title to such land immediately adjoining the land in controversy. Before we should feel justified in disturbing these titles we should have clear and convincing proof that the law compels it.

The judgment and order are reversed.

Burnett, J., and Hart, J., concurred.